# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAX MCCOY, #R58593, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18−cv–1297−NJR |
| | ) |
| IDOC TRANSFER COORDINATOR, | ) |
| DAVID MITCHELL, | ) |
| LT. MENNERICH, | ) |
| LT. KELLY, | ) |
| SGT. JONES, | ) |
| JOHN DOE 1, and | ) |
| JOHN DOE 2, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Max McCoy, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pontiac Correctional Center ("Pontiac"), brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Menard Correctional Center ("Menard"). In his Complaint, Plaintiff claims the defendants subjected him to excessive force, failed to protect him, and violated his due process rights in violation of the Eighth and Fourteenth Amendments. (Doc. 1).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

1

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: on June 16, 2017, a staff assault occurred in Plaintiff's cell house while Plaintiff and other inmates were at the recreation gym at Menard. (Doc. 1, p. 5). While officers were escorting Plaintiff and the other inmates back to the cellblock for a lockdown, there were over a dozen officers kicking and assaulting several inmates while they were on the ground. *Id.* Defendant Lieutenant Mennerich then locked the front entrance of the gate and told Plaintiff and several inmates to lie on the ground. *Id.* Shots were fired from the guard tower, and Plaintiff and the other inmates complied. *Id.* While on the ground, Plaintiff watched at least twenty officers assault three inmates while they were restrained in cuffs. (Doc. 1, pp. 5-6).

Defendant Lieutenant Kelly saw Plaintiff watching the assault and asked Plaintiff what he was looking at. (Doc. 1, p. 6). Kelly approached the gate and attempted to unlock it, but Mennerich grabbed Kelly and said: "Be cool, we'll get him." *Id.* Kelly then called Plaintiff a racial slur and told him to keep watching because he was next. *Id.* Ten to fifteen minutes later, Mennerich told

Defendant Lieutenant Mitchell to open the gate and cuff Plaintiff. *Id.* Mitchell told Plaintiff to cuff up twice, and both times Plaintiff asked why, noting he did nothing wrong. *Id.* Mitchell then kicked Plaintiff in his hip area and placed his knee on Plaintiff's lower back. *Id.* While attempting to put restraints on him, Mitchell called Plaintiff a racial slur and yelled at him to cuff up. *Id.*

Plaintiff turned over on his back and struck Mitchell in the face. *Id.* Plaintiff threw several more punches, but none connected with Mitchell. *Id.* Mitchell then punched Plaintiff in the throat, and Plaintiff lost his breath. *Id.* Plaintiff was cuffed and Mennerich, Kelly, and other officers began choking and kicking Plaintiff while he was restrained. *Id.* Plaintiff was then escorted by two officers who bent Plaintiff's hands and wrists while he was in cuffs until they reached the segregation unit. (Doc. 1, p. 7). In the segregation unit, Plaintiff was dragged up the steps upside down, and his face hit every step. *Id.* He was then thrown in the shower. *Id.* Defendant Sergeant Jones came to the shower and accused Plaintiff of enjoying assaulting lieutenants. *Id.* Plaintiff was taken out of the shower and taken to a cell. *Id.*

Jones came to the cell and told Plaintiff: "I fucking hate you coons." *Id.* He left but soon returned and asked Plaintiff if he wanted medical attention. *Id.* Plaintiff responded that he did, so he was cuffed, and Jones told him to walk with his body bent over and his face facing the floor. *Id.* While walking, Plaintiff noticed puddles of blood leading into a room. *Id.* When Plaintiff entered the room, Jones and several other officers "began to viciously and maliciously assault Plaintiff again." *Id.* After the assault, Plaintiff was taken to his cell, where his head was rammed into his cell door. *Id.* Thirty minutes later, Jones returned and asked Plaintiff if he wanted medical attention. (Doc. 1, p. 8). Plaintiff replied that he did, and he was taken to an area where he was able to speak with nurses and mental health personnel. *Id.*

Plaintiff was then taken to another room for an interview with the sergeant of the intel investigations unit of the Internal Affairs Department ("John Doe 1"). *Id.* Plaintiff was read his Miranda rights, and Plaintiff refused to give a statement. *Id.* Plaintiff asked John Doe 1 if he could

3

have his injuries photographed, and he responded: "You didn't make a statement, so your injuries aren't getting photographed." *Id.* Plaintiff was taken back to his cell; hours later, he was transferred to Pontiac. *Id.* John Doe 1 "knowingly conspired to cover up the brutal assaults by his fellow officers . . . by refusing to photograph Plaintiff's injuries." (Doc. 1, p. 13).

Several months later, Plaintiff was charged with aggravated battery in the Randolph County Court in Chester, Illinois, for assaulting Mitchell on June 16, 2017. (Doc. 1, p. 8). On December 19, 2017, the officers from Pontiac took Plaintiff to his court date and brought him back to Pontiac after court without issue. (Doc. 1, pp. 8-9). Plaintiff's court date was continued to February 2, 2018. (Doc. 1, p. 9). Instead of being taken to court by Pontiac officers again, on January 31, 2018, Plaintiff was scheduled for a temporary writ at Menard for a week stay. *Id.* On Plaintiff's court date, February 2, 2018, he was escorted out of his cell at Menard and taken to a bullpen. *Id.* Jones approached Plaintiff and asked, "You ready for round two, boy?" *Id.* He then kneed Plaintiff in his stomach and punched him several times. *Id.* Plaintiff was later escorted to court by Sergeant Faze, and he was returned to Pontiac on February 8, 2018. *Id.* The IDOC Transfer Coordinator knew there was an altercation on June 16, 2017, and sent Plaintiff to Menard for a court writ anyway, though he faced possible retaliation from staff. (Doc. 1, p. 10).

Plaintiff seeks monetary and injunctive relief. (Doc. 1, p. 14).

### Discussion

Based on the allegations and counts specified in the Complaint, the Court finds it convenient to divide this *pro se* action into seven counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** IDOC Transfer Coordinator failed to protect Plaintiff from violence at the hands of Menard corrections officers by transferring him to Menard for a temporary writ in January 2018, in violation of the Eighth Amendment.

**Count 2 –** Mitchell subjected Plaintiff to excessive force on June 16, 2017, by kicking him before and after he was restrained, in violation of the Eighth Amendment.

**Count 3 –** Mennerich subjected Plaintiff to excessive force on June 16, 2017, by striking him after he was restrained, in violation of the Eighth Amendment.

**Count 4 –** Kelly subjected Plaintiff to excessive force on June 16, 2017, by striking him after he was restrained, in violation of the Eighth Amendment.

**Count 5 –** Jones subjected Plaintiff to excessive force on June 16, 2017, and February 2, 2018, by striking him after he was restrained, in violation of the Eighth Amendment.

**Count 6 –** John Doe 1 violated Plaintiff's due process rights under the Fourteenth Amendment[1] by conspiring to cover up the assaults on Plaintiff by refusing to photograph his injuries.

**Count 7 –** Unknown Officers subjected Plaintiff to excessive force on June 16, 2017, by striking him after he was restrained, in violation of the Eighth Amendment.

As discussed in more detail below, Counts 2, 3, 4, and 5 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 1 – Failure to Protect

In order to state a failure to protect claim, Plaintiff must show that the IDOC Transfer Coordinator was "deliberately indifferent" to a risk of serious harm to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Plaintiff also must prove that this official was aware of a specific, impending, and substantial threat to his safety, which is often done by showing that the official received a complaint about a *specific* threat to the plaintiff's safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "A generalized risk of violence is not enough, for prisons are inherently

---

[1] Plaintiff seeks to bring this count under the Fifth Amendment as opposed to the Fourteenth Amendment. Because he is a state prisoner, however, and because the Fifth Amendment is made applicable to the states by the Fourteenth Amendment, the Fourteenth Amendment is the more appropriate standard.

dangerous places." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (citing *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005); *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004)). Conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Plaintiff's allegations do not state a failure to protect claim upon which relief may be granted against the IDOC Transfer Coordinator. Plaintiff claims that the IDOC Transfer Coordinator knew there was an altercation on June 16, 2017, and sent Plaintiff back to Menard for a court writ anyway more than seven months later, despite the fact that retaliation from staff was possible. These allegations do not show that the IDOC Transfer Coordinator was aware of a specific and impending threat to Plaintiff's safety; the mere possibility for retaliation is not specific, and it does not suggest an impending and substantial threat. If anything, Plaintiff's allegations suggest negligence rather than deliberate indifference on the part of the IDOC Transfer Coordinator. Plaintiff also cannot rely on a theory of *respondeat superior* to hold the IDOC Transfer Coordinator liable for the attack because it is well established that "[f]or constitutional violations under § 1983 ... a government official is only liable for his or her own misconduct." *E.g.*, *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015).

Accordingly, Count 1 and the IDOC Transfer Coordinator will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Counts 2, 3, 4, 5, and 7 – Excessive Force

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate

6

seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis).

Plaintiff has stated an excessive force claim upon which relief may be granted against Mitchell, Mennerich, Kelly, and Jones given his allegations that they all assaulted him while he was restrained without justification. Counts 2, 3, 4, and 5 will therefore proceed past threshold.

Plaintiff has failed to state a claim against the Unknown Officers, however. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Plaintiff seeks to bring an excessive force claim against "Unknown Officers" for "striking Plaintiff after Plaintiff was restrained for no reason on June 16, 2017." (Doc. 1, pp. 13, 14). Aside from this vague statement, Plaintiff does not attribute any actions in the Complaint to these "Unknown Officers." It is unclear whether they are the "other officers" who allegedly joined Mennerich and Kelly in choking and kicking him while he was restrained, the "several other officers" who later attacked Plaintiff alongside Jones, both, or neither. (Doc. 1, pp. 6-7). Because Plaintiff has not distinguished these defendants in some way so as to render them capable of properly answering the Complaint, the "Unknown Officers," designated in the Case Management/Electronic Case Filing ("CM/ECF") as "John Doe 2," will be dismissed without prejudice from this action along with Count 7.

### Count 6 – Due Process

The Due Process Clause of the Fourteenth Amendment provides that the states shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV. It is unclear how, in refusing to take photographs of Plaintiff's injuries in order to cover-up the actions of fellow officers, John Doe deprived Plaintiff of life, liberty, or property without due

7

process.

In fact, the Seventh Circuit has recognized a Section 1983 claim where a defendant tries to cover-up unlawful conduct, but the basis for this type of claim lies in the denial of a plaintiff's right of access to the courts. *Vasquez v. Hernandez*, 60 F.3d 325, 329 (7th Cir. 1995). A cover-up leads to a denial of access to the courts only where the cover-up was to some extent successful. *Id.* (finding a denial of plaintiff's right of access to the courts occurred when a conspiracy to cover-up "prevented a full and open disclosure of facts crucial to the cause of action, rendering hollow the plaintiffs' right of access."); *Gibson v. Chicago*, 910 F.2d 1510, 1523-24 (7th Cir. 1990) (stating that a plaintiff cannot state a claim for denial of access to the courts without alleging some concrete injury resulting from the alleged cover-up).

At this juncture, it is only speculation that John Doe 1's refusal to take photographs of Plaintiff's injuries will prejudice some non-frivolous legal claim of Plaintiff's. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009); *Christopher v. Harbury*, 536 U.S. 403, 414 (2002). In fact, Plaintiff notes that there is alternative "proof of Plaintiff's injuries," which he attached to the Complaint as Exhibits C, D, and I. (Doc. 1, p. 13).

Count 6, along with John Doe 1, will therefore be dismissed without prejudice.

**Pending Motions**

Plaintiff has filed a Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion") (Doc. 2). A temporary restraining order ("TRO") is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).

Further, the United States Supreme Court has emphasized that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original))**.** In considering whether to grant injunctive relief, a district court must weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence.

Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction. *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999). *Accord Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010).

Without expressing any opinion on the merits of any of Plaintiff's other claims for relief, the Court finds that neither a TRO nor a preliminary injunction should be issued in this matter. Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*.

Plaintiff also falls short of demonstrating that a preliminary injunction is warranted. It is not clear from the Complaint or the TRO Motion that Plaintiff will be returning to Menard when he is released from disciplinary segregation. Plaintiff merely states that "returning to Menard upon segregation release would be dangerous." (Doc. 2, p. 2). There is also no indication that Plaintiff has attempted to utilize alternative measures that are available to him to solve the issue. Prison regulations provide for voluntary placement of an inmate in protective custody where he will be in the presence of different correctional officers, should the need arise. ILL. ADMIN. CODE tit. 20, §§

501.310, 501.320 (1987). This provides a remedy should Plaintiff be threatened by Defendants. Additionally, federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482-83 (1995).

Accordingly, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) is **DENIED** without prejudice.

Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Doc. 3) shall be addressed in a separate order of this Court.

Plaintiff's Motion to Appoint Counsel (Doc. 4) is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for a decision.

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1**, **6**, and **7**, along with **IDOC TRANSFER COORDINATOR**, **JOHN DOE 1**, and **JOHN DOE 2**, are **DISMISSED** from this action without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNTS 2**, **3**, **4**, and **5** shall **PROCEED** against **MITCHELL**, **MENNERICH**, **KELLY**, and **JONES**, respectively.

**IT IS FURTHER ORDERED** that as to **COUNTS 2**, **3**, **4**, and **5**, the Clerk of Court shall prepare for **MITCHELL**, **MENNERICH**, **KELLY**, and **JONES**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** June 21, 2018

*Nancy J. Rosenstengel*

_____
**NANCY J. ROSENSTENGEL**
**United Sates District Judge**