IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MAX MCCOY,

    Plaintiff,

v.

LT. LUCAS MENNERICH, LT. KELLIE ELLIS and SGT. TYLER JONES,

    Defendants.

Case No. 3:18-CV-01297-NJR

## MEMORANDUM AND ORDER

Pending before the Court is a Motion for Summary Judgment by Defendants Lucas Mennerich, Kellie Ellis, and Tyler Jones (Doc. 79). For the reasons set forth below, the Court denies the Motion.

### FACTUAL AND PROCEDURAL BACKGROUND

This action stems from events which occurred during Plaintiff Max McCoy's term of incarceration at Menard Correctional Center, a maximum-security facility operated by the Illinois Department of Corrections ("IDOC"). Defendants were all employed as correctional officers by IDOC at the time of the events in question.

During his time at Menard, McCoy was classified as a staff assaulter and weapons violator, and as such he was placed in a special gallery in the West House of Menard with other similarly classified prisoners (Doc. 80-1 at 3). On June 16, 2017, McCoy was at the gym with approximately 50 other prisoners from the West House, including inmates from his gallery as well as other prisoners from the general population (*Id.* at 3-4). McCoy later stated in his deposition that several officers and inmates were fighting on the walk area between the gym and the cell houses and a shot was fired, so prisoners coming out of the gym got on

the ground (*Id.* at 4). McCoy has stated that he heard the gunshot and got on the ground, where he remained observing officers and inmates in an altercation on the walk (*Id.*). After about five minutes, McCoy indicates that he was approached by Lieutenant Mitchell and Defendant Ellis, who approached him and requested that he "cuff up." McCoy indicated that none of the other inmates were asked to cuff up, and he says that he asked Mitchell why he had to cuff up (*Id.* at 4-5). At this point, McCoy claims that Mitchell and Ellis yelled racial slurs and one of them placed a foot on the back of McCoy's neck, after which McCoy struck Mitchell, throwing multiple punches, and was then restrained by officers including Defendant Mennerich, who approached to assist Mitchell (*Id.*). McCoy indicates that he was struck by both Ellis and Mennerich and that Mennerich had his foot on McCoy's neck (*Id.* at 6).

After he was restrained, McCoy recalls being escorted by Officer Mallory and an unnamed officer to the segregation unit (*Id.* at 6). McCoy claims that these officers hit him further and called him more racial slurs, though neither has been named as a defendant in this action (*Id.* at 6-7). Those officers left McCoy in a shower cell at the end of his gallery (*Id.* at 8). After about 30 minutes, McCoy alleges that Defendant Jones escorted him from the shower cell to a different cell, physically forcing him to bend over at the waist (*Id.* at 9). Once in the cell, McCoy's handcuffs were removed, and after approximately 30 minutes he was asked if he wanted medical attention (*Id.*). After requesting medical attention, McCoy alleges that Jones took him from that cell and led him to another location where Jones and approximately eight other officers took turns beating him up (*Id.* at 10). Afterwards, Jones took him back to his cell, where McCoy began washing blood off his face (*Id.*). Jones returned to again ask if he wanted medical attention, and McCoy again requested to see a nurse (*Id.* at

10-11). On this occasion, McCoy was taken to a room where he was examined by nurses and had the opportunity to speak with officers from Internal Affairs (*Id.* at 11). Nurses observed bruises and contusions to McCoy's face but did not photograph his injuries (*Id.*). Because medical staff would not photograph his injuries, McCoy refused to speak to internal affairs, indicating that he would not give a statement until his injuries were photographed (*Id.*). McCoy was transferred to Pontiac Correctional Center that night, and the next morning he was examined by a nurse at Pontiac (*Id.* at 12). McCoy later pled guilty to aggravated battery for striking Mitchell (*Id.* at 17), and a prison disciplinary committee found him guilty of assault, dangerous disturbance, and disobeying a direct order essential to safety (Doc. 80-5).

Defendants and other correctional officers present on the day of the alleged beatings tell a very different version of events on the day in question. Ellis recalls being present in the area outside the gymnasium when a prisoner struck an officer, after which other prisoners began to struggle with other officers (Doc. 80-6). Ellis recalled Mennerich and Mitchell being involved in an altercation with a prisoner, but she stated that she did not witness that individual being restrained. Ellis saw Mennerich and Mitchell escorting a prisoner out of the area of restraint and then saw them again in the health care unit, but she was unsure which prisoner they had escorted. She herself recalls escorting a different prisoner back to the West House. She then noticed that her hand and wrist were swollen and was examined by a doctor, who told her to go to the hospital. She stated that she did not beat or restrain McCoy or use racial slurs against him, nor did she see any other correctional officers do any of these things.

Mennerich recalls seeing the altercations between prisoners and officers outside of the gymnasium and that he observed McCoy refusing to lay on the ground after a warning shot was fired (Doc. 80-7). Mennerich stated the McCoy kept getting on his knees to look around

despite being repeatedly ordered to lay flat, and that he swung his fist at Lt. Mitchell several times when Mitchell approached him, striking Mitchell once in the face. Mitchell and Mennerich subsequently restrained McCoy without assistance from Ellis, and other officers then took McCoy towards the health care unit.

Jones does not have any recollection of McCoy or of the events of June 16, 2017, though he concedes that records show that he did work that day (Doc. 80-8). He denies using excessive force or racial slurs against any inmates.

## LEGAL STANDARD

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence[.]" *Reid*

*v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir. 2014) (*quoting Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005)).

This does not mean, however, that a mere "scintilla of evidence" will be sufficient to prevent a grant of summary judgment – rather, a court must consider "whether the evidence in the record could support a reasonable jury finding[,]" and "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability" for the non-movant. *Anderson*, 477 U.S. at 252-55. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Rather, "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.*

## Discussion

To succeed in claiming excessive force in violation of the Eighth Amendment, a plaintiff must show that the force was used maliciously and sadistically to cause harm, rather than as a good-faith effort to ensure discipline. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). In examining a use of force, a court looks to a variety of factors, including the need for force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner. *DeWalt v. Carter*, 224 F.3d 607, 619–20 (7th Cir. 2000). A use of force need not result in severe injury, but the injury may not be *de minimis* to establish a claim. *Id.* at 620.

Here, before turning to the merits of McCoy's claim, Defendants argue that he is barred from seeking damages for the alleged use of force under *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). That case and others that have followed it hold that an inmate may not challenge a finding previously established in a criminal or disciplinary proceeding that was essential to the decision in that proceeding. Here, where McCoy pled guilty to aggravated assault against Mitchell, Defendants argue that McCoy cannot seek to present evidence that would contest the fact that he struck Mitchell and was restrained for assaulting an officer.

McCoy does not appear to contest these facts—he freely admits that he did strike Mitchell at least once and that he was then restrained by officers. The fact that officers were justified in restraining McCoy does not mean that any level of force would have been justified, however. If officers exceeded the level of force justified by the situation, then McCoy would still have a claim, and presenting evidence in support of that claim would not be a challenge to his aggravated assault conviction. Similarly, the fact that McCoy struck Mitchell would in no way justify officers in subsequently taking McCoy to a separate location and taking turns beating him, as McCoy alleges. Accordingly, McCoy is not prevented from making the allegations at the core of his complaint by *Heck*.

As for the substance of his claim, there are two clear versions of events here, one presented by McCoy and one presented by the correctional officers. While McCoy may be outnumbered in presenting his version of events, it still boils down to his word against that of the correctional officers. His account of events is not contradicted by evidence so concrete and overwhelming that no reasonable finder of fact could believe him. Accordingly, summary judgment must be denied.

## Conclusion

For these reasons, the Court **DENIES** Defendants' Motion for Summary Judgment (Doc. 79).

**IT IS SO ORDERED.**

**DATED:  June 2, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**